Coffee and others *vs.* Newsom.

No. 71.—PETER H. COFFEE and others, plaintiffs in error, *vs.* JAMES F. NEWSOM, executor, &c. defendant.

[1.] A denial in the answer from information and belief, is not sufficient to dissolve an injunction.

[2.] Where the equity of an injunction bill is not charged to be within the knowledge of the defendant, and the defendant merely denies all knowledge and belief of the facts alleged therein, the injunction will not be dissolved on the bill and answer alone.

[3.] It is a good answer to an application to dissolve an injunction upon bill and answer, that the equity of the bill upon which the injunction rests, is not denied by the defendant, whether from ignorance or any other cause.

[4.] The answer of the executor, that he was not privy to the fraud charged against his testator, and that he disbelieved the facts alleged in the bill against him, from his confidence in his integrity, is not sufficient to dissolve the injunction to restrain proceedings at law in favor of the estate.

[5.] In some particular cases, the Court will continue the injunction, though the defendant has fully answered the equity set up in the bill.

In Equity, in Pulaski Superior Court.

This was a bill in Equity, brought by the plaintiffs in error against the defendant in error, returnable to Pulaski Superior Court, and tried before Judge HANSELL, at the          Term, 1850.

The bill charged that in August, 1843, the complainants, Peter H. and John B. Coffee, entered into a treaty with the defendant's testator, Batts Newsom, for the purchase of the entire settlement of lands then claimed to be owned by him in the Counties of Telfair and Pulaski; that in the progress of said treaty, and to induce them to make the purchase, the said Batts conducted them over, and showed them a large body of valuable lands, upon a part of which was located the former residence of said Batts, and various necessary and valuable out-buildings, &c. all of which he represented to them to constitute and belong to the said settlement. The bill goes on to specify the numbers of the lots of land, and the district in which they lay, which said Batts exhibited to complainants, and represented as forming the said settlement, and to which he had and could and would make good and sufficient lawful titles; that the complainants, Peter H. and John B. confiding in the good faith and integrity of the said Batts, in

describing and showing to them the said settlement of lands, and relying upon his representations as to their location, &c. and as to the legality and sufficiency of his titles thereto—the title papers to which he represented as being at his then residence in Randolph County, and which, therefore, they had no opportunity to inspect—were induced to enter into a contract for the purchase of said lands; and in pursuance thereof, they, with Wilcox, the other complainant, made and delivered to said Batts their two promissory notes, for $1000 each—one to fall due on the 1st of January, 1844, the other twelve months thereafter; whereupon the said Batts then executed to them a " bond for titles," in which he obligated himself to make, or cause to be made to the said complainants, good and sufficient titles to his possession of lands lying in the Counties of Pulaski and Telfair.

The bill farther charged, that at the time of the contract, to wit: in August, 1843, William Newsom, a son and a tenant of Batts, was in possession of the premises, and was to continue in possession until the 1st of January thereafter; that there was upon the premises, and embraced in the contract, a gin-house, with the usual appendages to the same, of the value of $400 ; which said gin-house, (the said Batts having caused the gin to be carried away after the contract,) was, by the gross negligence of said Batts or his agents, burnt down and destroyed, &c.; that on or about the 1st of January, 1844, complainants went into the possession of the premises ; that shortly thereafter, Batts furnished them with a memorandum or schedule of the said lands, which, as they were informed and believed, was in the handwriting of the executor, the defendant in error.

The bill farther charged, that said memorandum contained lots to which Batts had not then, nor at any other time, any title or color of title, and that it made no mention of other lots, which had been represented and shown to complainants as belonging to and constituting part of said settlement of lands ; that said memorandum contained numbers for which they did not contract, and to one of which he never had any title ; for that the same had been, for many years previous, owned and cultivated by the complainant, Wilcox ; that other lots mentioned in said memorandum, complainants were informed and believed were owned and claimed by one John McDaniel and W. Melrose.

The bill farther charged, that it was not in the power of Batts,

in his lifetime, nor of his executor since his death, to make or se-
cure to them legal and sufficient titles to the said settlement of
lands; and that the lots and parcels of lands to which the said
executor was wholly unable to make good and sufficient titles,
were of essential importance and value to the said settlement, and
the loss of which rendered the residue of said settlement of com-
paratively little value.

The bill farther charged, that the aforesaid representations of
the said Batts, to induce them to purchase said settlement, he
knew, at the time, were false in the foregoing particulars.

The complainants offered to said Batts in his lifetime, and to
his executor since his death, to pay the notes upon receiving good
titles, after deducting therefrom the value of the gin-house, &c.
with which they refused to comply.

There were other charges made in the bill, which it is not ne-
cessary to mention.

The bill showed the subsequent death of Batts Newsom, and
the qualification of his executor.

The complainants in the bill were sued upon the notes, and the
cases were pending upon the appeal.   The bill concluded with a
prayer, that the Court would decree a rescission of the contract;
or if it should appear that defendant could make good titles, that
they might be allowed the amount of the damages sustained by
them, as a deduction from the amount of the notes.

The defendant, by his answer, admitted that his testator and
Peter H. and John B. Coffee entered into a contract as evidenced
in writing, and which is set forth in the bill, in reference to the
purchase of the settlement of land lying in Pulaski and Telfair
Counties, but rejects the idea that his testator made any false re-
presentations as to the quality, location, boundary or title of the
land sold.   He had no knowledge of what preceded the contract,
but presumes it embodies the understanding of the parties.   The
defendant appended a schedule to his answer, containing a list of
all the lots and parts of lots constituting the possession of land
sold by his testator to complainants, as far as he has any know-
ledge, information or belief.   Defendant admitted that the memo-
randum or schedule, furnished the complainants by his testator,
was prepared by him at his testator's request, who could not
write; that it was prepared with the title deeds before him, but

upon subsequent examination he found it was not accurate, and contained several mistakes.

Defendant admitted that the gin-house and running geer were burnt, as also the gin, which was not carried off as charged in the bill; but denies that it was the result of gross negligence of his testator or of his agent.

In regard to the exhibition of the lands sold to the complainants by the defendant's testator, the defendant denied knowing any thing, except "his testator told him that when he rode into the fields in cultivation with them, he was ashamed to show them, as they had been so badly cultivated by his son in charge of the premises; farther than this, he had neither knowledge or information."

The defendant admitted that the complainants had offered to pay the notes to him, if he would make a deduction for the destruction of the gin-house; but denied that they said any thing about the titles to the land, or any part thereof.

The defendant admitted the death of Batts Newsom, and his executorship; that suits had been instituted upon the notes.

Defendant could not answer as to the sufficiency of the titles in his custody, or which came to his possession, farther than that he considered them valid.

At the October Term of said Court, 1847, counsel for defendont moved to dissolve the injunction, upon the ground that the answer of the defendant denied the equity of complainants' bill.

At the April Term, 1850, the motion was heard and sustained, and the following order was passed by the Court: "It is in consideration of the fact, that the answer of the defendant is as full and as responsive as his representative character will enable him to make; as, also, that there is no sufficient reason apparent to the Court for retaining any longer said injunction, *Ordered*, that the same be dissolved."

To which said ruling and decision of the Court, counsel for plaintiff in error excepted, and has assigned error.

Cole and Donnelly, for plaintiff in error.

I. L. Harris, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

An injunction was obtained in this case, upon the fraud charged against the testator of the defendant. Is the answer of the executor, who admits his ignorance as to the principal allegations in the bill, but expresses his belief that they are untrue, sufficient to dissolve the injunction?

Believing that in the decisions of Courts, as well as the arguments of counsel, the chief of all perfections is, to be plain, pertinent and brief, I shall endeavor, in the present instance, to conform my practice to my principles.

[1.] We understand the general rule to be, that a denial in the answer from information and belief, is not sufficient to dissolve the injunction. *Apthorpe vs. Comstock*, 1 *Hopkins*, 148. *Ward vs. Van Bokkellen*, 1 *Paige*, 100. *Poor vs. Carleton*, 3 *Sumner*, 78.

[2.] And that where the equity of an injunction bill is not charged to be within the knowledge of the defendant, as is the case before us, and the defendant merely denies all knowledge and belief of the facts alleged therein, the injunction will not be dissolved on the bill and answer alone. *Rodgers vs. Rodgers*, 1 *Paige*, 426. *Quackenbush vs. Van Rosser*, 1 *Saxton's N. J. R.* 476. *Fulton Bank vs. New York & Sharon Canal Co.* 1 *Paige*, 311.

[3.] And it is always a good answer to an application to dissolve an injunction upon bill and answer, that the equity of the bill, upon which the injunction rests, *is not denied by the defendant, whether from ignorance of the facts or any other cause.* *Watkinson vs. Gillespy*, 5 *Paige*, 112.

*Rodgers vs. Rodgers*, *supra*, was a bill filed against the personal representatives, to restrain proceedings at law, on notes given to the testator. The equity of the bill on which the injunction was granted, was not charged to be in the knowledge of the defendants, and they put in an answer denying all knowledge or belief as to the principal facts on which it rested; and the Chancellor held, that in such a case, the injunction could not be dissolved on the bill and answer alone. This case is, in every feature, the one at bar.

[4.] *Roberts vs. Anderson*, (2 *Johns. Ch. R.* 202,) is also similar to it. There the bill charged fraud in the title to the premises

in controversy, and the injunction was issued to restrain the defendant from proceeding at law. All the denial contained in the answer was, that the defendants were not privy to any fraud, and that they believed the conveyance was good. But Chancellor *Kent* said, " This is leaving the question of fraud as unsettled as when the answer came in. *It is true, the defendants may have given all the denial that is in their power,* but the fraud may exist notwithstanding, and consistently with their ignorance, or the sincerity of their belief. It appears to me, then, that until the cause is brought to a hearing and decided on the merits, the injunction ought not to be dissolved, and that the case does not fall within the reason of the general rule, that an injunction is to be dissolved when an answer comes in and denies all the equity of the bill."

What, I ask, is the sum of the defendant's answer in the case before us? It is, that he *disbelieves* the material allegations in the bill, but that he *knows not* whether they are true or false; that they relate not to his own acts, but to those of his testator; that he was no party to the material transactions, but, on the contrary, a stranger to them. This surely can constitute no good foundation for a motion to dissolve the injunction. The bill and answer may both be true, and still the controversy be not in any wise affected. The contract with the testator may have been grossly fraudulent, and yet the present defendant, in good faith, not only aver his ignorance of the fact, but his total disbelief of it, from his entire confidence in the integrity of his testator.

[5.] In some particular cases, the Court will continue an injunction, though the defendant has truly answered the equity set up. 2 *Ves.* 19. *Wyatt's P. R.* 236. The injunction, then, ought not surely to be dissolved under the circumstances of this case.