McIlvaine, J.
There is no controvei’sy between, the parties as to the material facts appearing in the testimony set out in the bill of exceptions.
The proceedings which resulted in the order to open the road, issued to the plaintiff in error as supervisor of the road district, were in strict conformity to the provisions of the statute of January 27, 1853 (S. & O. 1289), then in *289 force. It appears, also, that the defendant in error was present at the time and place appointed for the view, for the purpose of claiming damages; but one of the viewers failing to attend, the claim was not presented, and the view was postponed for two days (of which postponement the defendant in error had due notice), and at that time the viewers met and duly performed their duties, and made report. The defendant in error was not present at the view, nor was his claim for compensation or damages presented to the viewers in writing, as required by the statute.
It further appears, that the defendant in error did not present his claim for damages on the first day appointed for the view, for the reason that the board of viewers was not full; and on the second day, when the view was actually made, he was prevented from being personally present at the view, by reason of the fact that on the day previous he had gone from his home and the neighborhood of the view, and was unable to return in time to meet the viewers, by reason of irregularity in the movement of the train of cars upon which he was traveling.
Upon this state of facts, considered in connection with the provisions of the constitution of the state, and the statutes in relation to roads and highways, the following questions are made:
1. Does the statute law conflict with the provisions of the constitution relating to trial by jury?
2. Does the statute contravene the provision of the constitution in relation to the inviolability of private property ?
3. Do the facts show a waiver, on the part of defendant in error, of his right to compensation for the lands appropriated ?
The statute of January 27, 1853 (S. & C. 1289), and the amendatory act of April 8, 1856 (S. & C. .1301), provide for a preliminary assessment of damages sustained by any person through whose lands a county public road is proposed to be established, by a board of viewers composed of three disinterested freeholders of the county, who are re *290 quired to report their assessments in writing to the county commissioners; and if an order for the establishment of the road be made upon the report of the viewers, it is further provided, that every claimant of damages on account of such road may appeal from the order of the commissioners to the Probate Court, by executing “ a bond or undertaking, payable to the State of Ohio, in a penal sum of not less than one hundred or more than three hundred dollars, in the discretion of the auditor, conditioned for the payment by such appellaut of all costs that may be adjudged against him,” etc. And on such appeal, provision is made for the assessment of compensation or damages by a jury; and if the amount assessed by the jury exceeds the amount assessed by the viewers, the appellant is entitled to costs; but if the sum be not greater the appellaut shall be adjudged “ to pay all costs created by the appeal.”
The objection made to this legislation by the defendant in error is, that the bond or undertaking required of the appellant is an unauthorized condition and burden imposed on his constitutional right to a trial, or assessment of eompensation, by a jury.
Section 5 of the first article of the constitution provides, “ The right of trial by jury shall be iuviolate,” and section 19 of the same article provides, “Private property shall ever be inviolate, but subservient to the public welfare. When taken . . . for the purpose of making or repairing roads which shall be open to the public without ■charge, a compensation shall be made to the owner in money, . . . and such compensation shall be assessed 'by a jury.”
In the first place, it is claimed in argument, that the right to a jury assessment, secured by section 19, is unconditional, and that (whatever may be the rule as to the right secured by section 5), the provision of section 19 nullifies all legislation on the subject which does not provide, without restriction, for an assessment of compensation by a jury in the first instance.
The constitution of 1802 did not provide for the assess *291 ment by a jury of compensation to the owners of private property taken for a public use. Section 5, however, of the first article of the present constitution, originally appeared as section 8, of article 8, of the old. constitution. But, it will be observed, that the right of trial by jury was not thereby for the first time introduced into our system of jurisprudence, although that was the first constitution of the state. The right appears to be therein recognized as pre-existing, and the purpose of .the provision would seem to be to preserve the right, whatever its nature and scope might be, inviolate. The right thus recognized, however, did not extend to actions or proceedings for the appropriation of private property to public uses. 5 Ohio; 411; 7 Ohio, 2 pt. Ill; 14 Ohio, 147; 5 Ohio St. 140. The purpose, therefore, of introducing into the present constitution the last clause of section 19 of the first article was to enlarge the rights of the citizen by extending the right of trial by jury to a class of cases wherein it did not before exist. But we can find no evidence of an intention on the part of the framers of the constitution to fortify this extension of the right, with immunities and privileges unknown in the history of the law relating to juries, and not enjoyable in other eases wherein the right of such trial previously existed. Henqp, we conclude that the mode in which the right secured by section 19 may be exercised and enjoyed, is subject to legislative control, to the same extent as in other eases where the right is secured by section 5. And inasmuch as the nature of the right and the means whereby it may bo enjoyed, are wholly undefined and unexplained in the constitution, they must be ascertained by reference to the common law and statutory law upon the subject, in force at and before the time of the adoption of the constitution.
The history of our jurisprudence, prior to the adoption of the present constitution, shows, that in civil cases within the jurisdiction of justices of the peace, wherein the right of trial by jury was fully recognized, the right was subordinated to the discretion and power of the legislature to *292 compel a party to submit, in the first instance, to a trial before a court without a jury; and in all such cases the right to a jury was burdened with the condition that the party aggrieved, before the right could be enjoyed in an appellate court, should execute an appeal bond, conditioned not only for the payment of costs of appeal, in the event of an adverse judgment in the appellate court, but of all the costs, as well as the judgment, on the merits. And since the adoption of the constitution the jurisdiction of justices of the peace has been extended by legislation to sums between one and three hundred dollars, without providing for a constitutional jury therein, and the judgments under such extended jurisdiction are final, unless the party desiring a trial by jury execpte" a bond with like condition. And in Norton v. McLeary, 8 Ohio St. 205, this court held that such legislation was preserved from constitutional infirmity, inasmuch as the right to appeal to a court where such jury could be had, was provided for.
Such has been the theory aud practice in this state for seventy years, under a constitution declaring that “ the right of trial by jury shall be inviolate,” and the statutes now under consideration have been in force and constant use for a period of sixteen years without being questioned, so far as we know. In view of these facts we are unable to hold that the moderate and reasonable restriction imposed upon the enjoyment of the right by this statute, is an impairment of the right itself, within the meaning of the constitution.
Similar questions have frequently arisen in tlvs courts of several of our sister states, and, when made in ckA actions, similar conclusions have generally been reached. Emerick v. Harris, 1 Binn. 416; McDonald v. Schell, 6 S. A. R. 240; Biddle v. Commonwealth, 13 S. & R. 405; Beers v. Beers, 4 Conn. 535; State v. Brennan’s Liquors, 25 Conn. 278; Curtis v. Gill, 34 Conn. 54; Jones v. Robbins, 8 Gray 329; Hapgood v. Doherty, 8 Gray, 374; Keddie v. Moore, 2 Murphy (N. C.), 41; Wilson v. Simonton, Hawks (N. C.), 442; Flint River Steamship Co. v. Foster, 5 Ga. 208; Murford v. *293 Barnes, 8 Ga. 444; State v. Beneke, 9 Iowa, 203; Deaton v. Polk Co., 9 Iowa, 594, etc.
2. Does the statute contravene the provision of the constitution iu relation to the inviolability of private property ?
The proviso in section 6 of the act of January 27, 1853, reads as follows : “ Provided, that such viewers shall not be required to assess or award damages or compensation to any person or persons, except minors, idiots, or lunatics, in consequence of the opening of said road, unless the owner or owners, or their agents, having notice, as provided for in the foregoing section, of the application and proceedings by which his, her, or their property is sought to be appropriated, shall have filed a written application with said viewers, giving a description of the premises on which, by them, damages or compensation are claimed; provided, further, that all applications for damages shall be barred, unless they be presented as provided for in this act.”
It is claimed that this proviso contravenes section 19, article 1, of the constitution which provides, that when private property is taken for the purpose of making or repairing roads, etc., “a compensation shall be made to the owner in money,” etc.
The right to compensation is undoubtedly made absolute and unconditional by the terms’of this provision in the com stitution ; but it is also true that the owner may waive his right to compensation, although it be a constitutional right. 6 Hill, 48; 5 Iiill, 468; 3 Comst. 519. But the claim of the defendant in error is :
1“ That such waiver can only be made by express consent, or by some positive act done by the owner equivalent thereto.
2. That the rule of the proviso, that all applications for damages shall be barred, unless presented as provided for in said act, was not intended as á rule of evidence of the waiver of the right to compensation, but as a bar by lapse of time.
3. That such a bar, by limitation of time, is unreasonable and void.
*294 1. As to the first proposition, we have no doubt that, in the absence of all statutory rules upon the subject, the proof of a waiver of a legal right must be found in the express assent of the party, or by some act done by him from which his .assent may be inferred.
2. As to the second proposition, we are of opinion that the intent of the legislature was to declare a rule of evidence, by which a waiver, on the part of the owners (other than minors, idiots, and lunatics), of their claim for compensation for property taken, might be established. The power of the legislature to declare such a rule of evidence is not questioned, at least, to the extent that the parties affected thereby might have actual notice of the time and place of the view.
"We are inclined to give this construction to the statute for the reason, among others, that we deem it beyond the power of the legislature to bar, by a statute of limitation, an action or a right secured by a constitutional provision immediately upon the accruing or maturing of the right. Such legislation, if not in terms, would, in effect, nullify the constitution, and work a forfeiture of private ¡rropertj'-. If, then, such be the law, the presumption being that the legislature did not intend to contravene the constitution, it becomes our duty to so construe the statute as to give it effect, and at the same time preserve the constitution from invasion, if such construction cau reasonably be made.
It is true that the phraseology of the proviso is not exactly equivalent to a declaration that compensation for lands should be deemed waived by the owner failing to present his application therefor in writing. But it is perfectly clear from the very words of the proviso that the right to apply for compensation in such case is barred; and it is equally clear, from the tenor of the whole act, that the legislature intended in such case, notwithstanding compensation had not been made, and notwithstanding the right to apply for compensation was barred, that the property should nevertheless be appropriated and the road established. Hence, one or the other of two conclusions must *295 follow, to wit: the legislature inteuded to take private property for a public use without compensation and without the owner’s consent; or, it intended that the circumstances named in the proviso should be deemed and taken as evidence that the owner had consented to waive his right to compensation. The former intention can not be presumed, nor can it be admitted, except from the necessity which arises upon language susceptible of no other meaning or inference. And we think there is no such necessity in this case.
Do the facts show that the defendant in error waived his right to compensation for the lands appropriated?
The defendant in error had full and actual notice, under the statute, of the proceedings by which his property was appropriated, and of the time and place of'the view, and he neglected to present his application for compensation to the viewers in writing. He is also chargeable with notice of the provisions of the statute and of the consequences of his neglect to present his claim. It must also be presumed that he knew that the public welfare required the road to be established through his lands. And with knowledge of all these facts, he left his home and the neighborhood of the view on the day preceding the.time appointed for the view, without appointing an ageut to present his claim or taking other steps to secure his compensation, and did. not return until after the report of viewers had been made.
Upon this state of facts, we are of opinion that the rule of the statute, as to waiver of compensation on his part, ought to have been applied. It is true that the defendant in error testifies that he did not waive or iutend to waive his right to compensation-. But we think the statutory evidence of his waiver must prevail, and that under that rule and the circumstances of this case, he is concluded from controverting the legitimate inferences to be drawn from his default in not presenting his claim for damages to the viewers in writing.
*296 We do not, however, undertake to say, nor do we believe that the failure to present an application to the viewers in wilting for compensation will, in every case and under all circumstances, preclude the owner of lands condemned to a public use from enjoining the appropriation; but any default which is not excused by unavoidable casualty, or by circumstances against which reasonable precaution could not have provided, will defeat such relief.
In this case we can find no such excuse. It is said that the return train was detained by an accident upon the railroad; but of this circumstance the defendant in error had assumed the risk, and against it he might well have provided by the employment of an agent to present his claim in his absence. Had he been absent from home when first served with notice of the view, with no opportunity to employ an effective agent, and his return had been prevented by like circumstances, a very different question would have arisen, and equity might afford relief. But here, his departure from home was voluntary and upon the eve of an, important event, and we can not regard his default otherwise than as the want of reasonable precaution and diligence under the circumstances.
The legislature, in the exercise of its discretion, intended to establish a stringent rule in these cases, and there is no reason why it should not be strictly enforced.
We fully appreciate the importance of protecting private property from unnecessary and unconstitutional invasions. But, nevertheless, under our constitution private property is subservient to the public welfare, and when a real necessity arises for its appropriation to a public use, and a fair and reasonable opportunity for the adjustment and payment of compensation to the owner, through the action of a jury, has been provided by law, a wise policy would dictate that he should be diligent in the assertion of his rights, so that the wants of the public may be supplied without unnecessary delay.

Judgment reversed and cause remanded.