## RICHARDSON &˙ MAY VS. T. M. LIGHTCAP.

1. ASSIGNMENT.   *Equitable assignment of chose in action.*

The assignment of an attorney's receipt of a claim for collection carries with it an equity to the proceeds of the judgment.   The effect of such an assignment is that the judgment creditor becomes but a mere trustee, having no right to the judgment in himself.   After notice the debtor could not rightfully pay except to the owner and holder of the order.

:2. INJUNCTION:   *Dissolution thereof on bill and answer.   Section 1016, Code of 1871.*

Before proof is taken there is a discretion to be exercised, according to the circumstances of the case, as to whether an injunction should be retained or not.   The general rule is, if the entire equity of the bill is sworn away by the answer the injunction must be dissolved.   But, that the answer may have this effect under the Code (§ 1016), it must be "responsive to the material allegations of the bill," and must be positive in its denials.   A disclaimer of personal knowledge, or a denial of all knowledge and belief, will not do.   Every allegation of the bill sworn to which is not substantially denied in the answer, upon defendant's own knowledge, must be taken as true.   If the equity of the bill is attempted to be obviated by new and distinct facts, the defendant holds the affirmative of them, and can get no benefit from them until admitted by the complainant or proved, and should not be accepted as true against the complainant on the hearing of· the motion to dissolve.

APPEAL from the Chancery Court of *Holmes* County.

Hon. THOMAS WALTON, Chancellor.

A very full statement of the case will be found in the opinion of the court.

It is assigned for error :

1. The court erred in sustaining the motion to dissolve the injunction.   The injunction should have been retained until the final disposition of the cause.

2. The notice for the dissolution of the injunction was not sufficient.

*W. L. Nugent* for appellants :

When notice of the motion to dissolve was given, the complainants should have been served with a copy of the answer. Code of 1871, § 1049.

Do the allegations of the bill make a case for relief ?   Are the appellants the owners of the specific fund by reason of the alleged assignment?   See Fitch *v.* Stamps, 6 How., 495.

In the case above cited the question herein involved has been definitely settled, and in that case Judge SHARKEY cites 5 Pet., 598; Alger v. Scott, 54 N. Y., 14; Conway v. Cutting, 51 N. H., 407; Lewis v. Berry, 64 Barb., 593; Superintendent, etc., v. Heath, 2 McCart. (N. J.), 22; Moody v. Kyle, 34 Miss., 506.

But counsel rely upon two authorities as being sufficient to overturn and unsettle the law of the state, announced by Chief Justice SHARKEY and affirmed by Chief Justice SMITH, in Moody v. Kyle, supra, and, as they insist that this court should reopen the question, it may be necessary to analyze the adjudications cited. With respect to the statement drawn from Mr. Bispham, I have only to say that it does not touch the question involved. Counsel are equally at fault with reference to the case of Roderick v. Gandrell, 59 Eng. Ch., 763. In that case, page 778, Lord TRURO expressly decides that an agreement between a debtor and a creditor that the debt owing shall be paid out of a specific fund coming to the debtor, or an order given by the debtor to his creditor upon a person owing money or holding funds belonging to the giver of the order, directing such person to pay such funds to the creditor, will create a valid equitable charge upon such fund, or operate as an equitable assignment of the debt or fund to which the order refers. This doctrine is sustained by the following authorities. 5 Wheat., 285; 3 Greenl., 346; 1 Wash. C. C., 424; 1 Pick., 461; 16 Me., 252; 17 ib., 401; 4 Md. Ch., 75; 21 Pick., 317; 20 Vt., 25; 6 Cush., 287; 18 Mo., 564; 3 Paige, 375; 26 Me., 114; 6 How., supra.

*Hudson & Gwin*, for appellee:

The order or letter of Lightcap was not drawn on or directed to his debtor, but on his attorney or agent, H. S. Hooker, to receive, to collect, and to pay over certain funds when collected. And we insist that an order so drawn is not such an assignment of a chose in action as will enable the assignee to maintain an action either at law or in equity; in fact, that it is no assignment whatever, though given for a

valuable consideration, and may be revoked at the pleasure of the party giving such order or letter, whether the agent or attorney has or has not agreed to apply the money, when collected, in accordance with the directions of the order. Even though the attorney had so promised, it is no assignment of a chose in action.  To constitute an assignment the order must be drawn and directed by the creditor to his *debtor*, directing the *debtor* to pay to a third person the debt.  Mr. Bispham, in his treatise on principles of equity, p. 174, says : " A mere direction to an agent to collect money and hand it over to a third party will not amount to an assignment." The directions to the agent are revokable at pleasure.

In the case of Roderick *v.* Gandell, 1 De G. M. & G., 763, and 15 Eng. L. & Eq., 22, to which we earnestly invite the attention of the court, the bill was filed by Roderick, as a public officer representing a joint stock company or bank, under the firm name of the " Liverpool Union Bank," against Pinninger & Westmacatt, attorneys, and Gandell & Brenton, the debtors of the bank ; that Gandell & Brenton, to induce the bank to forbear enforcing the payment of the debt due by them, amounting to about £3,000, and to obtain further advances from the bank, agreed to give a charge by way of equitable assignment upon certain debts due to them from the several railway companies named in the bill ; that Pinninger & Westmacatt were solicitors to the railway companies, and were employed in the settlement of the claims of Gandell & Brenton against the railway companies.   Gandell & Brenton wrote to said attorneys as follows :

" We hereby request of you that you will pay into the bank of Cuntiffe, Brooks & Co., for the Liverpool Union Bank, all moneys now due to us from the Chittenham, Oxford & London Junction Railway,  *  *  *  and we hereby authorize you to receive such moneys in our name, for the purpose, from the different committees.   We will thank you to write to the bank saying you will act on this letter."

The attorneys wrote that they would pay the money as

directed. The bank advanced about £9,692 in payment of drafts. The attorneys collected large sums of money from the railways, but refused to pay it over as requested in the letter.

The question decided was whether they constituted an equitable assignment, and Lord TRURO held that an order or letter, to constitute an equitable assignment, must be drawn upon and directed to the *debtor*, and not to a third person, as agent to collect and pay over. This case is precisely in point, and announces the doctrine upon which we insist.

SIMRALL, C. J., delivered the opinion of the court.

T. M. Lightcap, being indebted to D. G. Pepper for the purchase of several lots in the town of Tchula, to provide in part for the payment therefor, drew the following order:

"*21st April, 1873.*

*Mr. Henry S. Hooker, Lexington, Miss.*:

DEAR SIR—The claim in your hands for collection against Mr. M. A. Griffith, for the amount of mechanic's lien for repairs, amounting to $775 and the interest thereon, when collected you will please pay over or hold against the order of D. G. Pepper, and oblige.      Yours, very truly,

T. M. LIGHTCAP."

Pepper being indebted to complainants, Richardson & May, $1,375, secured by a mortgage or deed of trust on the same lots, with their consent sold the property to Lightcap for $1,375, taking Lightcap's notes, one for $200 and one for $775, due the 1st of January, 1874, bearing interest at the rate of ten per cent. per annum from date, which were indorsed and delivered by Pepper to Richardson & May. At the time of the sale, and as parcel of the arrangement, Lightcap gave the above order, which Pepper specially assigned by indorsement as follows: "Hold subject to the order of Richardson & May," and delivered it to Hooker, the attorney of record for Lightcap. Hooker recognized the order and agreed to pay the money, when collected, to Richardson & May.

The complainants allege that but for the giving of the order and the agreement that the proceeds of the claim against which it was drawn should, when collected, be applied to the indebtedness of Lightcap on his purchase, Pepper would not have made the sale, nor would Richardson & May have consented and ratified it. Lightcap is insolvent, and, owing to the depreciation in the value of the property caused by the burning of the houses on it, the purchase money will not be paid unless the order is collected.

The complainants further allege that the sheriff has collected, or is about to collect, the claim referred to in the order, and, though notified of their rights, declines to pay the money to them on the pretense that the order has been revoked by Lightcap.

The complainants further state that after giving the order Lightcap fraudulently, for the purpose of defeating their claim, drew another order on the fund in favor of Messrs. Allen & Dyer, who were associate counsel with Hooker in the litigation with Griffith. The sole consideration was their fees as attorneys. They had notice of the order on Hooker.

Lightcap was immediately put in possession of the property by Pepper, and has ever since been in undisturbed possession. It is averred that he knew the reasons for the sale, and that his notes and order would be transferred to Richardson & May.

Lightcap, in his answer, admits the sale and the terms, but neither admits nor denies that it was made with consent of Richardson & May; neither admits nor denies that the order was given to Richardson & May, or that Hooker recognized or agreed to pay it when the claim should be collected; states that the order was given as collateral security, *pro tanto*, for the purchase money of the lots, and when collected should be so applied; admits that he drew an order in favor of Allen & Dyer for their fees, but in good faith, and without fraudulent notice.

The answer then assumes the character of a cross-bill, and prefers allegations to the effect that Pepper made fraudulent

misrepresentations that he had title to three-fourths of the lots, whereas he well knew that he only had title to an undivided one-half.

Trusting to the truth of these statements, they operated as an inducement to him to make the purchase.

He further alleges that Pepper is insolvent, and that the covenants in his deed afford no security or indemnity.

He prays for a rescission of the contract, cancellation of the deed and of his obligations for the purchase money.

In accordance with the prayer of the original bill, an injunction was issued and served, restraining the sheriff from paying over the money to Allen & Dyer, or Lightcap, and restraining them from receiving it.

On motion the injunction was dissolved, and from that order an appeal was taken.

The motion was made on the bill and answer.

The complainants' equity is predicated on the order drawn by Lightcap on Hooker, in favor of Pepper, his assignment to them, the notice to Hooker, and his agreement to respect it.

It is claimed that thereby was wrought an equitable assignment *pro tanto* of the funds against which it was drawn irrevocable, and which could not be defeated by the subsequent act of the drawer.

The case as made in the bill is much like that of Fitch et al. *v.* Stamps, 6 How., 495. There, as here, the order was upon the attorneys for the proceeds of a claim which was in judgment. After the acceptance of the order McGehee, the creditor, assigned the judgment to Fitch for value. In a contest between Stamps, the payee of the order, and Fitch, assignee of the judgment, the court held that Stamps was an equitable assignee *pro tanto* of the fund, and was entitled to protection though the debtor had not assented thereto, and clearly so if he so assented.

Subsequently, in Anderson *v.* Miller, 7 S. & M., 586, it is declared in general terms that the assignment of the attorney's receipt for collection carries with it an equity to the proceeds

33

of the judgment. The effect of such a transaction is that the judgment creditor becomes but a mere trustee, "having no right to the judgment in himself." After notice the debtor could not rightfully pay except to the owner and holder of the order. Roberts v. Bean, 5 S. & M., 587.

We are not disposed to accede to the request of counsel for appellee to reconsider these cases. We accept them as affirming the law upon the subject.

Applying it to the case stated in the bill, we are of opinion that Richardson & May, assignees of Pepper, became equitable owners of so much of the fund in Hooker's hands for collection as would pay the principal and interest of the order.

It remains to be considered whether the answer so completely meets and destroys the equity of the bill as to have justified, at this early stage of the litigation, a dissolution of the injunction.

The allegations of the bill connect the order with the sale as a means in part of paying the price of the property; the obligations for the purchase were to be transferred, and were in fact transferred, to Richardson & May, who were the mortgage creditors of Pepper, whose coöperation and consent was therefore necessary in the consummation of the sale. It is positively averred that the sale would not have been made except for the security of the fund in Hooker's hands to the extent of $775 and interest. The material part of that allegation Lightcap admits. He says "it (the order) was given as collateral security for the purchase money." In response to these averments which connect Richardson & May with the sale, and of their standing in relation to Pepper and the property as mortgagees, he is equivocal, and neither admits nor denies them. It is hard to believe, in view of Lightcap's connection with these matters, that he did not have more information than he chose to disclose.

The statute (§ 1016, Code) is: "The answer shall be responsive to all the material allegations of the bill." "Facts averred in the bill, and not denied by the answer, except

·otherwise than by the general traverse, may be taken at the hearing as admitted.''

There is, before proof taken, something of discretion to be exercised, according to the circumstances, as to whether the injunction shall be retained or not. Bowen *v.* Haskins, 45 Miss., 188. The general rule, however, is, if the entire equity of the bill is sworn away by the answer, the injunction must fail.

But that the answer may have that effect " it must be responsive to the material allegations of the bill," and must be positive in its denials. Miller *v.* McDougal, 44 Miss., 689 ; Buckner *v.* Bierne, 9 S. & M., 304 ; 8 Ga., 444 ; Hooker *v.* Austin, 41 Miss., 717. A disclaimer of personal knowledge, or a denial of all knowledge and belief, will not do. Ib.

Mr. Hilliard, in his work on Injunctions, pp. 88, 97, summarizing the rule where the motion is predicated of the bill and answer, says that to give the answer the effect of displacing the bill, it must " fully, plainly, distinctly, and positively deny the allegations constituting the equity of the bill." " Every allegation of the bill sworn to, which is not substantially denied in the answer, upon defendant's own knowledge, must be taken as true."

The preliminary injunction is in aid of the ultimate redress, to preserve the property or fund to answer the final decree. Of itself it does not determine any right or necessarily prejudice any party. If a dissolution, before testimony is taken and final hearing, would be likely to deprive the complainant of all the benefits sought by his suit, that is a circumstance of serious weight as reason why it should be retained. Bowen *v.* Hoskins, *supra;* Hill. on Inj., 93.

In considering the motion in this case on bill and answer, we must lay out of view all that part of the answer which constitutes the cross-bill. Touching those matters the defendant assumes the character of plaintiff. The subject is new, and, although intimately connected with the transactions out of which the complainants' right arose, it is presented in the

record for the first time by the defendant. It need hardly be said that the fraudulent misrepresentations which, it is averred, induced Lightcap to purchase are not responsive to anything alleged by the complainants.

The cross-bill is in the nature of defense, but it is obtained by way of affirmative relief, which is in avoidance of that sought by the original bill, and, like all new and distinct facts, must be proved.

The rule in a court of equity is the same as at law, that new matter in avoidance must be proved by the party who affirms it. It would follow, in considering a motion to dissolve an injunction on bill and answer, we must be confined to the condition of fact stated in the bill, out of which the equity arises, and the responses of the defendant to these facts. If the equity is attempted to be discharged or obviated by new and distinct facts, the defendant holds the affirmative in respect to them, just as the complainant does toward the allegations of his bill. The defendant gets no benefit from them until admitted by the complainant or proved.

The pleading of the defendant is both an answer and a cross-bill in so far as it responds to the facts set forth in the bill. It was before the chancellor on the motion. So far as it introduced new and distinct facts they are not to have weight in favor of, nor to be accepted as true against, the complainant on the hearing of the motion. Canal Co. *v.* R. R. Co., 4 Gill & J., 7; State *v.* R. R. Co., 18 Md., 210; Coleman *v.* Hudspeth, Adams & Co., 49 Miss., 567.

Lightcap did not deny many of the facts out of which the complainants' equity sprung. Others, material and important, were neither admitted nor denied. Such an answer does not warrant a dissolution of the injunction. It ought to have been retained until the coming in of the proof, and we think there was error in sustaining the motion to dissolve.

The answer and cross-bill were filed the 2d November, 1874. On the 13th a notice was served on the complainants' solicitor that a motion to dissolve the injunction would be made on the

24th of the same month. It is not shown that the hearing was on that day, or when the order of dissolution was made. If in vacation, it ought to appear that the hearing was on the day appointed in the notice, or on a day to which it was adjourned, or by consent. Code, § 1049.

We infer that the hearing was in vacation. There is no formal motion in the record—nothing except the notice and the order of the chancellor.

We refer to this as a serious irregularity of practice.

The decree dissolving the injunction is reversed, the injunction is reinstated, and the cause remanded for further proceedings.